laGOTHARD, Judge.
Pipe Liners, Inc. (Pipe Liners) and New Hope Pipe Liners, Inc. (New Hope) appeal a judgment of the district court granting a preliminary injunction in favor of one of the many defendants in this suit, U-Liners East, Inc. (U-Liners). The remaining defendants include Edenwald Contracting Co., Inc., U-Liners Inc., U-Liners Contracting Co., and several of the individual owners of these corporations (Charles J. Follini, Jr., Robert Follini, Charles J. Follini, Sr., Eugene J. Camali, and George Paletta). The suit concerns the interpretation of a licensing agreement among the various parties. For the following reasons, the district court judgment is affirmed and the matter is remanded.

\ ¡¡FACTS

The basic facts, as recited in our previous opinion in Pipe Liners v. Edenwald Contracting, 610 So.2d 1109, 1110 (La.App. 5th Cir.1992), are as follows:
Pipe Liners developed, patented, and sells a process and materials for repairing underground pipes without digging up the ground. It uses plastic liners deformed into a “U” shape, which are threaded through existing pipe and then expanded with steam pressure. It granted exclusive licenses for the use of its process and products. It entered into such an agreement -with Edenwald on August 2, 1988, covering New York, New Jersey, and Connecticut. Edenwald assigned its rights under the licensing agreement to U-Liners. Pipe Liners also contracted with U-Liners East, a corporation with apparently the same principals as Edenwald and U-Liners, on August 25, 1988, for exclusive rights in Area 1 (Maine, Vermont, New Hampshire, Massachusetts, and Rhode Island) and Area 2 (Delaware, Virginia, Maryland, the District of Columbia, and most of Pennsylvania).
The licensing agreement between Pipe Liners and U-Liners was amended in August of 1989, to include an obligation of Pipe Liners to supply U-Liners with pipe-lining materials “... of merchantable quality according to [Pipe Liners] specifications and/or applicable industry standards as they pertain to length, outside diameter and SDRx, and suitable for the particular purpose intended for the product and [Pipe Liners] shall be responsible for any and all manufacturing defects in deformed pipe which cause the deformed liner to be unusable ...”
Under the August 1989 amended agreement, U-Liners was obligated, among other things, to pay Pipe Liners manufacturing royalties within thirty days of invoice, to pay installation royalties within sixty days of invoice, and to pay $250,000.00 to “... fund the development, design, manufacture and purchase of certain equipment necessary to manufacture 2" to 24" diameter deformed pipe liner ...”
UU-Liners has at all relevant times transacted business through U-Liners Contracting Co., Inc., which is now known as The Earthline Corporation. New Hope is Pipe Liners’ “master licensee.”[2]
On November 16, 1992, Pipe Liners notified U-Liners that it intended to cancel the licensing agreement due to U-Liners’ failure *306 to pay manufacturing costs and royalties as required under the licensing agreement. Prior to the effective date of the termination, U-Liners petitioned the trial court to enjoin Pipe Liners from terminating the licensing agreement, arguing that termination would cause irreparable injury to U-Liners. After a three day hearing on the merits, on July 7, 1993, the trial court granted a preliminary injunction in favor of U-Liners, prohibiting Pipe Liners and New Hope from cancelling the licensing agreement on the grounds of non-payment of royalties and/or license fees pending the trial in this action. Pipe Liners and New Hope have brought this appeal. LAW
As a matter of law, a preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo pending a trial of the issues on the merits of the case. To obtain a preliminary injunction, the moving party must show that the damage it will suffer may be irreparable if the injunction does not issue and that it is entitled to the relief sought. The moving party need only make a prima facie showing that it will prevail on the merits. The preliminary injunction requires less proof than is required in an ordinary proceeding for permanent injunction and the trial court has great discretion to grant or deny a preliminary 15injunction. See, Foret v. Terrebone, Ltd., 631 So!2d 103 (La.App. 5th Cir.1994); Franz v. Cormier, 579 So.2d 1201 (La.App. 5th Cir.1991); and the cases cited therein.
Irreparable injury means the moving party cannot be adequately compensated in money damages for its injury, or suffers injuries which cannot be measured by pecuniary standards. If a judgment would be valueless because of insolvency of the judgment debtor or other reasons, injunctive relief is proper. Franz, supra, (citations omitted).

ANALYSIS

On appeal, Pipe Liners and New Hope urge that the evidence clearly showed that U-Liners had not paid for the royalties owed under the agreement. However, Pipe Liners and New Hope failed to show that these royalties were properly due them. The licensing agreement provides that no royalty payments are due if the pipeliner delivered is “unusable.” At the three day hearing, Eugene Camali, the president of U-Liners, testified that U-Liners made royalty payments to Pipe Liners for approximately four years, but that Pipe Liners, on several occasions, delivered defective and/or improperly sized pipeliner, which rendered it unusable for the particular job for which it was ordered.
Mr. Camali’s testimony was corroborated by Patrick Ledoux, who was one of the inventors of the U-Liner process and was the majority stockholder in the Pipe Liners corporation until approximately one year prior to the hearing. Mr. Ledoux testified that Pipe Liners experienced many difficulties in manufacturing pipeliner in diameters greater than twelve inches, the sizes U-Liners was most interested in [ ^obtaining and sizes which were contemplated as being available in the near future by the parties when the licensing agreement was entered into.
Mr. Ledoux testified that problems with pipeliner larger than twelve inches in diameter included kinking of the pipeliner during the manufacturing process and difficulties with coiling the pipeliner for transportation. He testified that other licensees of Pipe Liners also complained about the quality of the pipeliner they received, particularly with pipelines having diameters of twelve inches and greater. Mr. Ledoux further testified that the only money spent by Pipe Liners for research and development of the larger sized pipelines was a testing program funded through the $250,000.00 payment from U-Liners which was part of the August 1989 amended licensing agreement. He testified that in order to properly develop the production process for the larger size pipelines, Pipe Liners needed to invest money into research and development, but failed to do so during the time he was with the company, directing money towards other company mattes.
Pipe Liners and New Hope also assert that U-Liners will not suffer irreparable injury if the licensing agreement was can-celled. However, Mr. Camali testified that because of the problems with defective and *307 improperly sized pipeliner, and pipeliner delivered only alter exorbitant delay, U-Liners has already suffered lost contracting opportunities and damage to its reputation. He further testified that certain contracts require a “fold in form” process, which is the U-Liner process, and that U-Liners is presently under an annual service contract with the City of Baltimore, which specifically requires the U-Liners process.
After hearing all of the testimony and the evidence submitted, the trial court made a factual determination that if the licensing agreement was cancelled, U-Liners 17would not be able to compete effectively in the marketplace, and would indeed suffer irreparable injury which could not be measured by pecuniary standards.
It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). Although Pipe Liners and New Hope offered testimony at the hearing which contradicted the testimony presented by U-Liners, “reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Id. Even if a court of appeal is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently, it may not reverse if the trial court’s findings are reasonable in light of the record review in its entirety. Id.
After a thorough review of the record, we cannot say that the trial court was not reasonable, or clearly wrong, in its determination that U-Liners will suffer irreparable injury if the licensing agreement is cancelled.
Accordingly, the July 7, 1993 judgment, granting a preliminary injunction in favor of U-Liners and enjoining Pipe Liners and New Hope from terminating the licensing agreement on the grounds of non-payment of royalties and/or license fees pending the trial in this action is hereby affirmed. The matter is remanded to the trial court for further proceedings.
AFFIRMED AND REMANDED.
KLIEBERT and CANNELLA, JJ., dissenting.

. "Standard Diameter Ratio.”

. In September of 1992, Pipe Liners and New Hope entered into a “Master License Agreement” whereby Pipe Liners assigned to New Hope all of its rights and obligations under the licensing agreement with U-Liners.